# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE.

2012 JUL 24 ℗ 2: 40

|  |  |
|---|---|
| UNITED STATES OF AMERICA; | ) |
|  | ) |
| THE COMMONWEALTHS OF | ) |
| MASSACHUSETTS AND VIRGINIA; | ) |
|  | ) |
| THE STATES OF CALIFORNIA, COLORADO, | ) |
| CONNECTICUT, DELAWARE, FLORIDA, | ) |
| GEORGIA, HAWAII, ILLINOIS, INDIANA, | ) |
| IOWA, LOUISIANA, MARYLAND, | ) |
| MICHIGAN, MINNESOTA, MONTANA, | ) |
| NEVADA, NEW HAMPSHIRE, NEW JERSEY, | ) |
| NEW MEXICO, NEW YORK, NORTH | ) |
| CAROLINA, OKLAHOMA, RHODE ISLAND, | ) |
| TENNESSEE, TEXAS, and WISCONSIN; and | ) |
|  | ) |
| THE DISTRICT OF COLUMBIA; | ) |
|  | ) |
| ex rel. TIMOTHY LEYSOCK, | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| FOREST LABORATORIES, INC. and FOREST | ) |
| PHARMACEUTICALS, INC., | ) |
|  | ) |
| Defendants. | ) |

U.S. DISTRICT COURT
DISTRICT OF MASS.

Civil Action No.

**COMPLAINT**

**QUI TAM – FILED UNDER SEAL
PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**JURY DEMAND**

On behalf of the United States of America and the Commonwealths of Massachusetts and Virginia; the sovereign States of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, and Wisconsin, and the District of Columbia (all collectively, "the Certain States"), pursuant to the *qui tam* provisions of the Federal False Claims Act, 31 U.S.C. §§ 3729-3733 (the "FCA"), and the false claims acts of the Certain States (the "State False Claims Acts"), Relator Timothy Leysock makes this Complaint against Defendants Forest Pharmaceuticals, Inc. and Forest Laboratories, Inc. (collectively, "Defendants"). In support thereof, Relator alleges as follows:

## I.    INTRODUCTION

1.    Relator Leysock brings this action on behalf of the United States pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and on behalf of the Certain States pursuant to the State False Claims Acts, to recover penalties and damages arising from Defendants' fraudulent and illegal practices in promoting sales of their drugs Savella (milnacipran HCl, indicated to relieve symptoms of fybromyalgia) and Bystolic (nebivolol, indicated to relieve hypertension).

2.    As set forth below, Defendants' conduct also violates the False Claims Acts of the Certain States (collectively, the "State False Claims Acts" or the "State FCA's").

3.    In the course of his employment at Defendant Forest Pharmaceuticals, Inc. ("Forest Pharma"), Relator learned first-hand about Defendants' regular pattern and course of illegal and fraudulent conduct in marketing their drugs Savella and Bystolic by paying kickbacks to doctors in various forms and marketing for off-label indications not approved by the U.S. Food and Drug Administration ("FDA").

1

4.      Defendants' scheme was calculated to cause physicians, in reliance on Defendants' misinformation regarding the indications of these drugs, to prescribe the drugs to as many patients with these cardiovascular risk factors as possible, for as many indications as possible, including off-label indications unapproved by the FDA.

## II.      PARTIES

5.      Relator Leysock is a citizen of the United States and a resident of the State of Florida. He was employed by Forest Pharma as a sales representative for over fifteen years, from August, 1996, through May, 2012. Relator's sales territory comprised the Counties of Palm Beach, Indian River, Martin, St. Lucy, and Okeechobee.

6.      Relator has provided to the United States Attorney General, the United States Attorney for the District of Massachusetts, and the Attorneys General of the Certain States, a disclosure of substantially all material facts underlying the allegations of the Complaint, as required by the False Claims Act, 31 U.S.C. § 3730(b)(2), and relevant State False Claims Acts.

7.      Defendant Forest Laboratories, Inc. ("Forest Labs") maintains its corporate headquarters in New York, New York. Forest Labs is principally engaged in the manufacture and sale of pharmaceuticals, including prescription drugs falling under the jurisdiction and regulation of the U.S. Food and Drug Administration.

8.      Defendant Forest Pharma is a wholly-owned subsidiary of Forest Labs and is headquartered in St. Louis, Mo. Forest Pharma is so thoroughly dominated and controlled by its corporate parent, Forest Labs, that Forest Labs is also liable for the wrongdoing described herein.

## III.      JURISDICTION AND VENUE

9.      This action arises under the False Claims Act. This Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3732(a) and 3730(b). This court also has jurisdiction pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1331.

2

10.     Relator has direct and independent knowledge of the allegations of this Complaint and brings this action on behalf of himself, the United States, and the Certain States, pursuant to the relevant provisions of the FCA and State FCA's.

11.     Supplemental jurisdiction for Counts IV - XXXIII arises under 28 U.S.C. § 1367, as these claims relate closely to the federal claims such that they form part of the same case or controversy under Article III of the U.S. Constitution.

12.     At all times material to this Complaint, Defendants regularly conducted substantial business within the Commonwealth of Massachusetts, maintained permanent employees in Massachusetts, and made and are making significant sales within Massachusetts. Defendants are thus subject to personal jurisdiction in Massachusetts.

13.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because Defendants transact business in this district.

## IV. RELEVANT STATUTES AND REGULATIONS

### A.     Prohibition on Kickbacks

1.     The federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(2)(B) ("AKS"), prohibits offering to pay or paying "any remuneration" whether "directly or indirectly, overtly or covertly, in cash or in kind," to induce the purchase of goods or services "for which payment may be made in whole or in part under a federal healthcare program." *Id.* Compliance with the AKS is a material requirement of the Medicare and Medicaid programs.

2.     "The federal anti-kickback statute is one of several statutes that, broadly speaking, seek to eliminate potential financial conflicts of interest from the Federal health care programs so that health care decision-making is untainted by inappropriate financial influence . . . . Financial incentives linked to referrals create risks of, among other problems, overutilization of items or services, increased costs to the Federal programs, corruption of medical decision-making, and

unfair competition." Testimony of Lewis Morris, Chief Counsel to the Inspector General of the

U.S. Dept. of Health and Human Services, before the U.S. House Committee on Ways and

Means, Subcommittee on Health, April 6, 2006.

3.      The two primary federal healthcare programs protected by the AKS are Medicare

and Medicaid. Medicare is a federal health insurance program created by Congress in 1965 for

the elderly and disabled. *See* 42 U.S.C. §§ 1395-1395hhh. It is the nation's largest health

insurance program and covers nearly 40 million lives. Medicare is administered by a federal

agency, the Centers for Medicare and Medicaid Services ("CMS").

4.      Medicaid is a public-assistance program that pays for medical expenses incurred

by low-income patients. The Medicaid program pays for services pursuant to plans developed

by the states and approved by the U.S. Department of Health and Human Services ("HHS")

through CMS. *See* 42 U.S.C. §1396a(a)-(b). States pay doctors, hospitals, pharmacies, and other

providers and suppliers of medical goods and services according to government-established

rates. *See* 42 U.S.C. §1396b(a)(1), 1903(a)(1). The federal government then pays each state a

statutorily determined percentage of "the total amount expended . . . as medical assistance under

the State plan . . . " *See* 42 U.S.C. §1396b(a)(1). This federal-to-state payment is known as

federal financial participation.

5.      The AKS operates to prevent misuse of public funds by barring Medicare and

Medicaid from paying for claims that are tainted by improper solicitations, payments or other

remuneration from vendors to service providers. The AKS provides, in relevant part, that it is

illegal to "offer[] or pay[] any remuneration . . . to induce [any] person . . . to purchase, lease,

order, or arrange for or recommend . . . any good . . . for which payment may be made . . . under

a Federal health care program." 42 U.S.C. § 1320a-7b(b)(2). Thus, the AKS and its

4

implementing regulations apply not only to those on the receiving end of the remuneration, but also to those pharmacies and others who give gifts or other inducements to doctors or patients.

**B. The False Claims Act**

6. Because the government will not knowingly pay for prescriptions and other purchases tainted by violations of the Anti-Kickback Statute, the False Claims Act has the effect of making claims for payment associated with kickbacks false claims for purposes of the FCA, creating liability for any kickback payor or payee with respect to such claims. Any person conspiring in the payment or receipt of kickbacks is also liable under the FCA.

7. The Office of the Inspector-General for the Department of Health and Human Services (OIG-HHS) has long stressed the impropriety of remuneration flowing to physicians in any form. *See, e.g.*, 59 F.R. 65372-01 (December 19, 1994) (criticizing a wide variety of forms of physician reimbursement).

8. Preventing this type of fraud and abuse is so important to the government that 42 C.F.R. § 423.504(b)(4)(vi)(H) requires Medicare Part D plan sponsors to implement training programs specifically directed to preventing fraud, waste, and abuse of Medicare funds.

9. The FCA imposes liability on any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval ("false claim"). § 3729(a)(1)(A)[1]. The FCA defines "claim" to include any request or demand, whether under contract or otherwise, for money that is made to an agent of the United States or to a contractor if the money is to be spent to advance a government program or interest and the government provides or will reimburse any portion of the money. § 3729(b)(2). The FCA defines "knowingly" to mean actual knowledge, deliberate ignorance of truth or falsity, or reckless disregard of truth or falsity, and no proof of specific intent to defraud is required. § 3729(b)(1).

---

[1] Unless otherwise indicated, all "§" references are to sections of Title 31 of the United States Code.

10. The FCA also imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim ("false statement"). § 3729(a)(1)(B). The FCA defines "material" to mean having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. § 3729(b)(4).

11. The FCA also imposes liability on any person who conspires to commit false claims or false statements ("conspiracy claim"). § 3729(a)(1)(C).

12. Here, as detailed below, Defendants violated the AKS and FCA in order to induce doctors to write on- and off-label prescriptions.

## C. Drug Coverage under Federal Healthcare Programs

14. Congress has the authority to decide which drugs and uses will be paid for by federal healthcare programs. As alleged below, Congress has exercised this authority in very specific and considered ways regarding each federal program. For "covered outpatient drugs," as that term is defined by statute, Congress has integrated FDA drug regulations into federal healthcare programs regarding what prescriptions will be covered and paid by these programs.

15. Pharmaceutical drug companies cannot distribute a drug in interstate commerce unless the FDA has approved its use. 21 U.S.C. §§ 355(a) & (d). After extensive evaluation of laboratory and clinical data, the FDA may approve a pharmaceutical drug for certain uses, which are reflected in the drug's label. The FDA does not regulate the practice of medicine and thus cannot prohibit physicians from prescribing drugs for uses outside of the approved label, but does, however, prohibit drug manufacturers from marketing or in any way promoting drugs for uses not contained in the FDA-approved label for that drug. 21 U.S.C. §§ 331 & 352.

16.     The FDA monitors and enforces manufacturers' compliance with advertising and promotional regulations under the Food, Drug, and Cosmetics Act ("FDCA") and the Food and Drug Administration Modernization Act of 1997 ("FDAMA").

17.     Federal and state health care programs establish conditions under which they will pay for prescription drugs dispensed to beneficiaries. As alleged more specifically below, these conditions incorporate the FDA regulations to define those drugs that will be covered and under what circumstances they will be reimbursed by government healthcare programs. Government healthcare programs do not reimburse the cost of drugs that are prescribed either for off-label uses or as a result of illegal misconduct such as off-label marketing or payment of kickbacks.

18.     As such, the knowing and undisclosed failure to comply with FDCA regulations regarding the marketing of approved uses of drugs will cause the government to pay out benefits it did not intend to pay for non-covered and non-reimburseable drugs.

### D.     The FDA Regulatory System

21.     Approval of a drug by the FDA is the final step in a multi-year process of study and testing. The FDA does not approve a drug for treatment of sickness in general. Instead, a drug is approved as safe and effective for treating the specific patient population and condition for which the drug has been tested. The FDA requires objective evidence of this safety and efficacy before a drug is approved as part of its commitment to "evidence-based medicine." Then, based on its review of laboratory and clinical data, the FDA may approve a drug for use in treating a specific patient population with a specific condition for which the drug has been thoroughly tested.

19.     Indications and dosages approved by the FDA are set forth in a drug's label, the content of which is reviewed and approved by the FDA. 21 U.S.C. §§ 352, 355(d). An example of a drug's label is the printed insert contained in the drug's packaging. By federal regulation,

7

the label must conform to the indications and dosages that the FDA has approved. 21 U.S.C. § 355(d).

20.    Under FDAMA, if a manufacturer wishes to market or promote an approved drug for additional uses – i.e., uses not listed on the approved label – the manufacturer must conduct another series of clinical trials similar to those which supported the initial FDA approval. 21 U.S.C. § 360aaa(b), (c). Until the FDA has granted approval of the new use, the manufacturer cannot market the drug for that use. Off-label marketing restrictions are an important safety-related aspect of the FDAMA because they require manufacturers to prove the efficacy of their drugs for additional uses, rather than avoid FDA review.

21.    "Off-label" or "unapproved" use refers to the use of a drug for any purpose, or in any manner, other than the indications approved by the FDA and described in the drug's labeling or indications supported by certain compendia named in the Medicaid statute. *See infra* at ¶33. Off-label use includes treatment beyond the indications and use, treatment of the indicated condition at a different dose or frequency than specified in the label, or treatment of an unapproved patient population (e.g., treating a child when the drug is approved only to treat adults).

22.    FDA approval of a drug is limited to the specific indications for use listed in the NDA, and the manufacturer may only market the drug for those specific indications. Within the body of the approved NDA (which may consist of volumes of material) is the exact labeling which the manufacturer is required to provide with the drug, which is based on the approved indications for use. A drug is misbranded under the FDCA if, among other things, its labeling is false or misleading, including descriptions of intended uses for the drug that have not been approved by the FDA. 21 U.S.C. §§ 331, 352. The term "labeling" encompasses the actual label attached to the drug's immediate container, as well as all other written, printed, or graphic

8

material. FDA reviews the proposed labeling under 21 U.S.C.§ 355(b)(1)(F), because such labeling contains the claims that the drug's manufacturer or sponsor intends to make for its use.

23.     Because a drug approval is limited to those specific uses listed in the NDA, if a manufacturer promotes an approved drug for an indication not in the NDA, it is not covered by the approval, and is therefore an unapproved new drug as to that use. Likewise, if "labeling" for the drug suggests indications for use that are not in the NDA, the drug lacks adequate directions for that use, and the drug is misbranded pursuant to 21 U.S.C. §352(f).

24.     In addition to prohibiting manufacturers from directly marketing and promoting a drug's unapproved use, Congress and the FDA have also sought to prevent manufacturers from employing indirect methods to accomplish the same end. For example, the FDA regulates two of the most prevalent indirect promotional strategies: (1) manufacturer dissemination of medical and scientific publications concerning the off-label uses of their products; and (2) manufacturer support for Continuing Medical Education ("CME") programs that focus on off-label uses.

25.     With regard to the first practice – disseminating written information –FDAMA permits a manufacturer to disseminate information regarding off-label usage only in response to an "unsolicited request from a health care practitioner." 21 U.S.C. § 360aaa-6. In any other circumstance, a manufacturer is permitted to disseminate information concerning the off-label uses of a drug only after the manufacturer has submitted an application to the FDA seeking approval of the drug for the off-label use; has provided the materials to the FDA prior to dissemination; and the materials themselves are submitted in unabridged form and are neither false nor misleading. 21 U.S.C. §§ 360aaa(b) & (c); 360aaa-1. The second practice, corporate funding of CMEs, is discussed *infra*.

26.     The off-label regulatory regime protects patients and consumers by ensuring that drug companies do not promote drugs for uses other than those found to be safe and effective by an independent, scientific governmental body – the FDA.

## E.     Prescription Drug Payment Under Federal Health Care Programs

### 1.     The Medicaid Program

27.     Medicaid is a public assistance program providing for payment of medical expenses for approximately 55 million low-income patients. Funding for Medicaid is shared between the federal government and state governments. Together, Medicaid and Medicare pay for the purchase of more prescription drugs than any other buyer in the United States.

28.     Federal reimbursement for prescription drugs under the Medicaid program is limited to "covered outpatient drugs." 42 U.S.C. §§ 1396b(I)(10), 1396r-8(k)(2), (3).

29.     Under the Medicaid statute, a "covered outpatient drug" includes a drug dispensed by prescription and approved as safe and effective under the FDCA, 21 U.S.C. §§ 355 & 357, but does not include "a drug or biological used for a medical indication which is not a medically accepted indication." 42 U.S.C. § 1396r-8(k)(2), (3).

30.     The statute defines "medically accepted indication" as:

any use for a covered outpatient drug which is approved under the [FDCA], or the use of which is supported by one or more citations included or approved for inclusion in any of the compendia described in subsection (g)(1)(B)(i) of this section.

*Id.* at § 1396r-8(k)(6). The three compendia described in subsection (g)(1)(B)(i) are the American Hospital Formulary Service Drug Information, the United States Pharmacopeia-Drug Information (and its successor publications), and the Drugdex Information System. *Id.* at § 1396r-8(g)(1)(B)(i).

10

31.     Thus, federal healthcare programs reimburse only prescriptions that are written for an indication approved by the FDA or a use that is supported in one of these three compendia. Additionally, federal healthcare programs will not reimburse for prescriptions that are for an indicated use but are the result of illegal conduct, such as off-label marketing or payment of kickbacks.

## 2.     The Medicare Program

32.     The Medicare Prescription Drug Improvement and Modernization Act of 2003 added prescription drug benefits to the Medicare program. Medicare serves approximately 43 million elderly and disabled Americans. The first stage of the Medicare program, from May 2004 through December 2005, permitted Medicare beneficiaries to enroll in a Medicare-approved drug discount card program. In addition, low-income beneficiaries qualified for a $600 credit (funded by Medicare) on their drug discount card for 2004 and again for 2005.

33.     Starting in January 2006, Part D of the Medicare Program provided subsidized drug coverage for all beneficiaries, with low-income individuals receiving the greatest subsidies. For those beneficiaries with dual eligibility under both Medicare and Medicaid, their prescription drugs are covered exclusively under Medicare Part D. Thus, the responsibility for providing pharmacy benefits for dually eligible beneficiaries was transferred from Medicaid to Medicare Part D on January 1, 2006.

34.     The Part D prescription drug program provides benefits and exclusions comparable to the Medicaid program. Specifically, a Part D covered drug is available only by prescription, if approved by the FDA (or is a drug described under section 1927(k)(2)(A)(ii) or (iii) of the Social Security Act), used and sold in the United States, *and used for a medically accepted indication* (as defined in section 1927(k)(6) of the Act).

11

35.     The definition of a covered Part D drug specifically excludes drugs or classes of drugs, or their medical uses, which may be excluded from coverage or otherwise restricted under Medicaid under section 1927(d)(2) of the Act, with the exception of smoking cessation agents, and thereby excludes from coverage both prescriptions for off-label uses and prescriptions that result from illegal conduct, such as kickbacks and off-label marketing.

36.     Medicare Part D is administered through CMS, with coverage provided through private prescription drug plans. Plan sponsors are authorized to negotiate independently for pharmacy reimbursement and price concessions with manufacturers and pharmacies, and then to seek reimbursement from Medicare.

37.     All plan sponsors are required to have a comprehensive plan to detect, correct and prevent fraud, waste and abuse. The specific requirements of the compliance program for the Part D benefit includes directions to specific kinds of fraud and abuse in violation of program requirements, such as non-compendia drug payments.

38.     The Prescription Drug Benefit Manual ("PDBM") issued by CMS identifies an example of Sponsor fraud, waste and abuse as "Non-compendia payments: Payments for Part D drugs that are not for a 'medically accepted indication.'" PDBM, Ch. 9, § 70.1.1. The PDBM further specifically identifies an example of pharmaceutical manufacturer fraud, waste and abuse as "Illegal Off-Label Promotion: Illegal promotion of off-label drug usage through marketing, financial incentives, or other promotional campaigns." PDBM, Ch. 9, § 70.1.6.

### 3.     Reimbursement Under Other Federal Health Care Programs

39.     In addition to Medicaid and Medicare, the federal government reimburses a portion of the cost of prescription drugs under several other federal health care programs, including but not limited to programs administered by the Department of Defense (the "DOD"),

the Department of Veteran's Affairs (the "VA") and the Office of Personnel Management (the "OPM").

40. Specifically, DOD administers TRICARE (formerly CHAMPUS), a health care program for individuals and dependents affiliated with the armed forces. The VA administers its own health program, along with CHAMPVA (a shared cost program) for the families of veterans with 100 percent service-connected disabilities. OPM administers the Federal Employee Health Benefit Program, a health insurance program for federal employees, retirees, and survivors.

41. Conditions for, and payment of claims for off-label prescription drugs under these programs are comparable to coverage under the Medicaid program. *See* 32 C.F.R. § 199.4(g) (15); TRICARE Policy Manual 6010.47-M, Chapter 8, Section 9.1 (February 1, 2008); CHAMPVA Policy Manual, Chapter 2, Section 22.1, Art. II (A)(2) (June 6, 2002) (coverage considered for off-label usage only upon review for medical necessity and demonstration of reliable evidence of efficacy).

42. Reimbursement for drugs under these programs may occur either through direct purchase of drugs later administered at government facilities, or through coverage of drugs administered by other providers to veterans and members of the armed forces eligible for benefits under these programs.

43. While each government-funded health program establishes its own reimbursement criteria, none knowingly pay for medications that are not prescribed for a medically accepted indication, that are prescribed as a result of false or misleading information disseminated by the pharmaceutical manufacturer, or that are the result of illegal misconduct such as the payment of kickbacks or unlawful marketing activities by the pharmaceutical manufacturer.

13

**F.    Defendants Caused False Claims to be Submitted For Off-Label Prescriptions of Savella, Bystolic, and Namenda**

44.    Reimbursement for prescription drug claims by government healthcare programs such as Medicare and Medicaid is limited to covered outpatient drugs. To qualify as a covered outpatient drug, the drug must be used for a medically-accepted indication, limited to uses approved by the FDA and uses supported by the published compendia identified in the Medicaid statute. Because these programs specifically exclude coverage and reimbursement for unapproved, non-compendia uses of drugs, claims submitted for prescription drugs that were prescribed for off-label uses are false claims that violate statutory conditions for payment. Submission of such claims materially misrepresents that the claims are eligible for reimbursement consistent with applicable statutes and regulations, and results in the disbursement of public funds never intended to be used for that purpose.

45.    Reimbursement for prescription drug claims by government healthcare programs is also conditioned upon the claims' not having been caused by illegal misconduct such as the payment of kickbacks or the practice of off-label marketing. Thus, prescriptions that result from payment of kickbacks (in violation of Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS")) or illegal off-label marketing (in violation of, *inter alia*, 21 C.F.R. § 99.101) to physicians are not reimbursable.

46.    As alleged below, Defendants illegally paid kickbacks to doctors to induce them to write prescriptions for Savella, Bystolic, and Namenda and illegally marketed these drugs for off-label uses that are not safe and effective and were neither approved by the FDA nor included in any of the drug compendia specified by the Medicaid statute.

47.    Thus, Defendants knowingly and foreseeably caused claims for Savella, Bystolic, and Namenda to be submitted in violation of government conditions of payment. Every claim

14

that Defendants caused to be submitted to the Medicare, Medicaid, and other government

healthcare programs through means of their kickback and off-label marketing campaigns is a

false claim. Defendants' knowing conduct in causing the submission of such claims violated the

False Claims Act.

## V.     DEFENDANTS' FRAUDULENT CONDUCT

48.     Savella is approved by the FDA ("on-label") for treatment of complications of

fibromyalgia; Bystolic is approved for treatment of hypertension; and Namenda is approved to

treat Alzheimer's Disease.

### A.     Off-Label Marketing of Savella

49.     Forest Pharma, however, knows that the there are far fewer victims of

fibromyalgia than of depression, so it systematically instructed its sales force to market Savella

to psychiatrists to prescribe to patients with depression but not fibromyalgia, even though that

use is off-label and Savella is not safe and effective for that off-label use.

50.     For example, at a meeting on the launch of Savella in April or May of 2009 with

Relator's District Manager ("DM") Bill Archaumbault ("Archaumbault") and sales

representatives ("reps") Jon Dafonseca ("Dafonseca"), Rick Sztorc, Randy Vesser, and Tim

Diemer, along with other reps, to get all the reps on a consistent message, Archaumbault told the

reps to market Savella to psychiatrists for use in treating depression by stressing the role of

norepinephrine in depression and that Savella has a greater affinity to norepinephrine than do

either Cymbalta or Effexor.[2] Sales rep Dafonseca later boasted to Relator about Dafonseca's

success in marketing Savella to psychiatrists for treating patients suffering from depression.

---

[2] Cymbalta and Effexor are antidepressants sold by Forest Pharma's competitors.

51. Besides directing this practice, Forest Pharma actively encouraged reps to make these illegal sales pitches by including Savella prescriptions written by psychiatrists in the "total territory report," one of the bases upon which sales commissions are based.

52. Forest reps also were encouraged to suggest to doctors that they tell their patients to avoid the high copayments of Bystolic and Savella by cutting the pills, even though Bystolic and Savella are not approved by the FDA for such cutting.

**B. Off-Label Marketing of Bystolic**

53. Forest Pharma systematically marketed Bystolic to treat Mitral Valve Prolapse ("MVP"), a heart valve abnormality that is unrelated to Bystolic's approved indication of hypertension and that Bystolic is not safe and effective in treating.

54. Forest Pharma also systematically marketed Bystolic for its nitric oxide-caused vasodilatory effects, even though such a use is not approved by the FDA.

55. For example, sales rep Chris Delvalle ("Delvalle") is based in south Florida, and his DM (Kirk Franke) e-mailed his reps, telling them to market Bystolic's nitric oxide vasodilatory effects, even though the FDA had told Forest it was not allowed to claim that Bystolic was a vasodilator based on nitric oxide effects.

56. Investigation by Relator and his counsel revealed that these practices were not limited to Relator's home state of Florida. Instead, they are nationwide.

57. For example, Edward R. Boyd III ("Boyd") was a sales rep with Forest Pharma from March 2008 until March 2010 in Birmingham, Ala.

58. As stated above, Bystolic is indicated for hypertension (high blood pressure) to lower blood pressure.

59. Boyd, however, was directed by his DM, Adam Bishop, to market Bystolic for use in patients with Mitral Valve Prolapse, regardless of whether they had hypertension.

16

60.     In support of this directive, Boyd regularly dropped off large quantities of

Bystolic samples at the Mitral Valve Prolapse Center of Alabama, located at 880 Montclair Road

in Birmingham, during his employment with Forest Pharma. These samples were used to induce

prescriptions of Bystolic to patients with MVP, such that these samples are part of both an off-

label marketing scheme and a kickback scheme.

## C.     Off-Label Marketing of Namenda

61.     Forest Pharma systematically marketed Namenda to treat multiple sclerosis and

cerebral palsy, even though Namenda is not approved for those indications and is not safe and

effective in treating them.

62.     Boyd was also involved in the off-label promotion of Namenda, which is

indicated for treating Alzheimer's disease. On the instructions of their DM, Adam Bishop, sales

reps in the Birmingham area marketed Namenda for treating multiple sclerosis and cerebral

palsy, for which it is not indicated and for which it is not safe and effective.

## D.     Kickbacks for Savella and Bystolic

63.     Forest Pharma also systematically instructed its sales force to pay kickbacks to

doctors to induce them to write prescriptions of Bystolic, and to induce the doctors to write

prescriptions of Savella to patients with depression and to patients with fibromyalgia.

64.     In a further effort to boost sales of Savella, Forest Pharma had a practice of giving

checks to doctors. Although disguised as "speakers' fees" to hide their illegal nature, the real

purpose of the checks was to induce the receiving doctors to write prescriptions for Savella and

Bystolic. The inducements were effective and the doctors receiving them wrote both on- and

off-label prescriptions for Savella and Bystolic.

65.     For example, rep Tim Diemer wanted to have Dr. David Liporace paid as a lunch

speaker. Dr. Liporace practices Internal Medicine in West Palm Beach at 580 Village Blvd.

17

Diemer's supervisor, DM Brian Appelblatt ("Appelblatt") initially denied the request because he said he had looked at Dr. Liporace's prescription numbers and he was not writing enough prescriptions for Savella. Relator Leysock and Diemer sent e-mails to Appelblatt requesting he change his mind. Appelblatt changed his mind and sent an e-mail approving the request and stating that "if his [Dr. Liporace's] numbers don't start to fly, he will never get paid again."

66.     Diemer then gave Dr. Liporace a check for $1,000 as a "speaker's fee." To fool anyone who checked, this rep. had Dr. Liporace sign the rep's computer to make it look like Dr. Liporace had been present and made an oral presentation to other doctors at a certain lunchtime speaking engagement – but Dr. Liporace was not there and did not make any presentation. Instead, this rep visited Dr. Liporace in his office and had him sign there!

67.     Defendants' kickback scheme also included paying doctors to write prescriptions of Bystolic.

68.     For example, sales rep Dafonseca made at least twelve payments of at least $1,000 to cardiologist Amarnath Vedere ("Vedere"), who practices in Wellington, Palm Beach Gardens, and Belle Glade. The payments were disguised as being "speaker's fees" for luncheon presentations, but Dr. Vedere did not make presentations at those events – indeed, he did not even attend them. Instead, sales rep Dafonseca would hand out samples to the doctors who did attend. Most of the time, Dafonseca would not even tell the doctors receiving the samples that Vedere had been scheduled to make a presentation, because neither Vedere nor Dafonseca ever intended that Vedere make any presentation.

69.     Defendants' kickback scheme is also exemplified by payments that Defendants made via rep Delvalle to Dr. Avi Mendelson ("Mendleson"), an internist who practices at 4700 N. Congress Ave. in West Palm Beach.

18

70.     On one of his regular sales visits in May or June of 2011, Relator Leysock visited Dr. Mendleson. Dr. Mendelson mentioned that he was scheduled to make a lunchtime presentation that day at the offices of Dr. Raj Bansal, a Primary Care physician who practices at 875 North Military Trail in Jupiter. Relator was speaking to Dr. Mendelson around 11 am that day and asked when Dr. Mendelson needed to leave; Dr. Mendelson then laughed and explained that "I don't have to go, Chris [Delvalle] told me that I just have to write more Bystolic [prescriptions] and he'll pay me." Dr. Mendelson further explained that he was given a speaker's fee every month (3 per quarter) as long as he prescribed sufficient amounts of Bystolic, which he did.

71.     Boyd also explained that reps "were pushed over and over again to book as many speaker programs as we could." Defendants' standard practice was to pay the speakers approximately $1,000 per speaking engagement – but only offered these lucrative deals to doctors who wrote lots of prescriptions for Bystolic or other Forest drugs. Some doctors did as many as six presentations per month, amounting to tens of thousands of dollars annually.

72.     All of these kickback and off-label schemes caused non-reimbursable prescriptions of Savella, Bystolic, and Namenda to be submitted to federal and state healthcare programs nationwide.

## COUNT I

### 31 U.S.C. §3729(A)(1)

73.     Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

74.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §3729 *et seq*.

75. By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the United States Government for payment or approval in violation of 31 U.S.C. § 3729(a)(1).

76. Compliance with applicable federal laws and regulations cited herein is a material condition of payment of claims submitted to the United States.

77. Had the United States known that Defendants were violating the federal laws and regulations cited herein, it would not have paid the claims caused to be submitted by Defendants' fraudulent and illegal practices.

78. As a result of Defendants' violations of 31 U.S.C. §3729(a)(1), the United States has been damaged in a significant amount to be determined at trial.

## COUNT II

### 31 U.S.C. §3729(A)(2)

79. Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

80. By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to get false or fraudulent claims paid or approved by the Government in violation of 31 U.S.C. § 3729(a)(2).

81. Compliance with applicable federal laws and regulations cited herein is a material condition of payment of claims submitted to the United States.

82. Had the United States known that Defendants were violating the federal laws and regulations cited herein, it would not have paid the claims caused to be submitted by Defendants' fraudulent and illegal practices.

83. As a result of Defendants' violations of 31 U.S.C. §3729(a)(2), the United States has been damaged in a significant amount to be determined at trial.

20

## COUNT III

### 31 U.S.C. § 3729(A)(3)

84. Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

85. Defendants combined, conspired, and agreed together with physicians and others to defraud the United States by knowingly causing false claims to be submitted to the United States for the purpose of having those claims paid and ultimately profiting from those false claims. Defendants committed other overt acts set forth above in furtherance of that conspiracy, all in violation of 31 U.S.C. § 3729(a)(3), causing damage to the United States.

86. Compliance with applicable federal laws and regulations cited herein is a material condition of payment of claims submitted to the United States.

87. Had the United States known that Defendants were violating the federal laws and regulations cited herein, it wouldd not have paid the claims caused to be submitted by Defendants' fraudulent and illegal practices.

88. As a result of Defendants' violations of 31 U.S.C. §3729(a)(3), the United States has been damaged in a significant amount to be determined at trial.

### COUNT IV

### CALIFORNIA FALSE CLAIMS ACT, CAL. GOV'T CODE § 12650 *et seq.*

89. Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

90. This is a claim for treble damages and penalties under the California False Claims Act, Cal. Gov't Code § 12650 *et seq*.

91. Defendants violated Cal. Gov't Code § 12651(a)(1) and (2) by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false

21

claims to be made, used, and presented to the State of California in violation of federal and state laws. The State of California, by and through the California Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

92.     Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of California.

93.     Had the State of California known that Defendants were violating the federal and state laws and regulations cited herein, it would not have paid the claims caused to be submitted by Defendants' fraudulent and illegal practices.

94.     As a result of Defendants' violations of Cal. Gov't Code § 12651(a), the State of California has been damaged in a significant amount to be determined at trial.

95.     This Court is requested to accept supplemental jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damages to the State of California in the operation of its Medicaid program.

## COUNT V

## COLORADO MEDICAID FALSE CLAIMS ACT, CO. REV. STAT. § 25.5-4-303.5 *et seq.*

96.     Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

97.     This is a claim for treble damages and penalties under the Colorado Medicaid False Claims Act, Co. Rev. Stat. § 25.5-4-303.5 *et seq*.

98.     Defendants violated Co. Rev. Stat. § 25.5-4-305(1) by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of Colorado in violation of federal and state laws. The State of Colorado, by and through the Colorado Medicaid program and other state health care

programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

99.    Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of Colorado.

100.    Had the State of Colorado known that Defendants were violating the federal and state laws and regulations cited herein, it would not have paid the claims caused to be submitted by Defendants' fraudulent and illegal practices.

101.    As a result of Defendants' violations of Co. Rev. Stat. § 25.5-4-305(1), the State of Colorado has been damaged in a significant amount to be determined at trial.

102.    This Court is requested to accept supplemental jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damages to the State of Colorado in the operation of its Medicaid program.

## COUNT VI

## CONNECTICUT FALSE CLAIMS ACT FOR MEDICAL ASSISTANCE PROGRAMS, CONN. GEN. STAT. § 17B-301b *et seq.*

103.    Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

104.    This is a claim for treble damages and penalties under the Connecticut False Claims Act for Medical Assistance Programs, Conn. Gen. Stat. § 17b-301b *et seq.*

105.    Defendants violated Conn. Gen. Stat. § 17b-301b(a)(1) and (2) by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of Connecticut in violation of federal and state laws. The State of Connecticut, by and through the Connecticut Medicaid program and

other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

106.    Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of Connecticut.

107.    Had the State of Connecticut known that Defendants were violating the federal and state laws and regulations cited herein, it would not have paid the claims caused to be submitted by Defendants' fraudulent and illegal practices.

108.    As a result of Defendants' violations of Conn. Gen. Stat. § 17b-301b(a)(1) and (2), the State of Connecticut has been damaged in a significant amount to be determined at trial.

109.    This Court is requested to accept supplemental jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damages to the State of Connecticut in the operation of its Medicaid program.

## COUNT VII

## DELAWARE MEDICAID FALSE CLAIMS ACT, 6 DEL. CODE § 1201 *et seq.*

110.    Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

111.    This is a claim for treble damages and penalties under the Delaware Medicaid False Claims Act, 6 Del. Code §1201 *et seq*.

112.    Defendants violated 6 Del. Code § 1201 by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of Delaware in violation of federal and state laws. The State of Delaware, by and through the Delaware Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

24

113.     Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of Delaware.

114.     Had the State of Delaware known that Defendants were violating the federal and state laws and regulations cited herein, it would not have paid the claims caused to be submitted by Defendants' fraudulent and illegal practices.

115.     As a result of defendants' violations of 6 Del C. § 1201(a), the State of Delaware has been damaged in a significant amount to be determined at trial.

116.     This Court is requested to accept supplemental jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damages to the State of Connecticut in the operation of its Medicaid program.

## COUNT VIII

## DISTRICT of COLUMBIA PROCUREMENT REFORM ACT, D.C. CODE §1-1188.14 *et seq.*

117.     Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

118.     This is a claim for treble damages and penalties under the District of Columbia Procurement Reform Act, D.C. Code §1-1188.14 *et seq.*

119.     Defendants violated D.C. Code §1-1188.14 (a)(1) and (2) by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the District of Columbia in violation of federal and state laws. The District of Columbia, by and through the District of Columbia Medicaid program and other District of Columbia health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

120.    Compliance with applicable federal and District laws and regulations cited herein is a material condition of payment of claims submitted to the District of Columbia.

121.    Had the District of Columbia known that Defendants were violating the federal and state laws and regulations cited herein, it would not have paid the claims submitted in connection with Defendants' fraudulent and illegal practices.

122.    As a result of Defendants' violations of D.C. Code § 2-308.14(a), the District of Columbia has been damaged in a significant amount to be determined at trial.

123.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to the District of Columbia in the operation of its Medicaid program.

## COUNT IX

### FLORIDA FALSE CLAIMS ACT, Fla. Stat. §68.082 *et seq.*

124.    Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

125.    This is a claim for treble damages and penalties under the Florida False Claims Act, Fla. Stat. §68.082 *et seq*.

126.    Defendants violated Fla. Stat. § 68.082 by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of Florida in violation of federal and state laws. The State of Florida, by and through the State of Florida's Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

127.    Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of Florida.

128.     Had the State of Florida known that Defendants were violating the federal and

state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal

practices caused to be submitted.

129.     As a result of Defendants' violations of Fla. Stat. § 68.082, the State of Florida

has been damaged in a significant amount to be determined at trial.

130.     This Court is requested to accept supplemental jurisdiction of this related state

claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to

the State of Florida in the operation of its Medicaid program.

## COUNT X

### GEORGIA STATE FALSE MEDICAID CLAIMS ACT, GA. CODE § 49-4-168 *et seq.*

131.     Relator re-alleges and incorporates the allegations in the preceding paragraphs as

if fully set forth herein.

132.     This is a claim for treble damages and penalties under the Georgia State False

Medicaid Claims Act, Ga. Code § 49-4-168 *et seq.*

133.     Defendants violated Ga. Code Ann. § 49-4-168.1 by engaging in the fraudulent

and illegal practices described herein, including knowingly causing thousands of false claims to

be made, used, and presented to the State of Georgia in violation of federal and state laws.  The

State of Georgia, by and through the Georgia Medicaid program and other state health care

programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims

submitted in connection therewith.

134.     Compliance with applicable federal and state laws and regulations cited herein is

a material condition of payment of claims submitted to the State of Georgia.

27

135.    Had the State of Georgia known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal practices caused to be submitted.

136.    As a result of Defendants' violations of Ga. Code Ann. § 49-4-168.1, the State of Georgia has been damaged in a significant amount to be determined at trial.

137.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to the State of Georgia in the operation of its Medicaid program.

## COUNT XI

### HAWAII FALSE CLAIMS ACT, HAW. REV. STAT. § 661.21 *et seq.*

138.    Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

139.    This is a claim for treble damages and penalties under the Hawaii False Claims Act, Haw. Rev. Stat. § 661.21 *et seq.*

140.    Defendants violated Haw. Rev. Stat. § 661.21(a) by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of Hawaii in violation of federal and state laws. The State of Hawaii, by and through the Hawaii Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

141.    Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of Hawaii.

142.    Had the State of Hawaii known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal practices caused to be submitted.

143.    As a result of Defendants' violations of Haw. Rev. Stat. § 661-21(a) the State of Hawaii has been damaged in a significant amount to be determined at trial.

144.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to the State of Hawaii in the operation of its Medicaid program.

## COUNT XII

## ILLINOIS WHISTLEBLOWER REWARD AND PROTECTION ACT(as amended), 740 ILL. COMP. STAT. §175/3 et seq.

145.    Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

146.    This is a claim for treble damages and penalties under the Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat.175 *et seq.*

147.    Defendants violated 740 Ill. Comp. Stat.175/3(a) by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of Illinois in violation of federal and state laws.  The State of Illinois, by and through the Illinois Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

148.    Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of Illinois.

149. Had the State of Illinois known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal practices caused to be submitted.

150. As a result of Defendants' violations of 740 Ill. Comp. Stat.175/3(a), the State of Illinois has been damaged in a significant amount to be determined at trial.

151. This court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to the State of Illinois in the operation of its Medicaid program.

## COUNT XIII

## INDIANA FALSE CLAIMS AND WHISTLEBLOWER PROTECTION ACT, IND. CODE 5-11-5.5 *et seq.*

152. Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

153. This is a claim for treble damages and penalties under the Indiana False Claims and Whistleblower Protection Act, Ind. Code 5-11-5.5 *et seq.*

154. Defendants violated Ind. Code 5-11-5.5-2 by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of Indiana in violation of federal and state laws. The State of Indiana, by and through the State of Indiana's Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

155. Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of Indiana.

30

156.    Had the State of Indiana known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal practices caused to be submitted.

157.    As a result of Defendants' violations of Ind. Code 5-11-5.5-2, the State of Indiana has been damaged in a significant amount to be determined at trial.

158.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to the State of Indiana in the operation of its Medicaid program.

## COUNT XIV

### IOWA MEDICAID FALSE CLAIMS ACT, IOWA CODE § 685.2(1)(a), (b) *et seq.*

159.    Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

160.    This is a claim for treble damages and penalties under the Iowa Medicaid False Claims Act, Iowa Code § 685.2(1)(a) and (b) *et seq.*

161.    Defendants violated Ind. Code 5-11-5.5-2 by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of Iowa in violation of federal and state laws. The State of Iowa, by and through the State of Iowa's Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

162.    Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of Iowa.

31

163. Had the State of Iowa known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal practices caused to be submitted.

164. As a result of Defendants' violations of Iowa Code § 685.2(1)(a) and (b), the State of Iowa has been damaged in a significant amount to be determined at trial.

165. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to the State of Iowa in the operation of its Medicaid program.

## COUNT XV

## LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW, LA. REV. STAT. § 437.1 *et seq.*

166. Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

167. This is a claim for treble damages and penalties under the Louisiana Medical Assistance Programs Integrity Law, La Rev. Stat. § 437.1 *et seq.*

168. Defendants violated La. Rev. Stat. § 438.3 by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of Louisiana in violation of federal and state laws. The State of Louisiana, by and through the State of Louisiana's Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

169. Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of Louisiana.

32

170. Had the State of Louisiana known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal practices caused to be submitted.

171. As a result of Defendants' violations of La. Rev. Stat. § 438.3, the State of Louisiana has been damaged in a significant amount to be determined at trial.

172. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to the State of Louisiana in the operation of its Medicaid program.

## COUNT XVI

### Maryland False Health Claims Act, Md. Code Health–General § 2-602 *et seq.*

173. Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

174. This is a claim for treble damages and penalties under the Maryland False Health Claims Act, Md. Code Health–General § 2-602 *et seq.*

175. Defendants violated Md. Code Health–General § 2-602(a) by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of Maryland in violation of federal and state laws. The State of Maryland, by and through the State of Maryland's Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

176. Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of Maryland.

33

177. Had the State of Maryland known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal practices caused to be submitted.

178. As a result of Defendants' violations of Md. Code Health–General § 2-602(a), the State of Maryland has been damaged in a significant amount to be determined at trial.

179. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to the State of Maryland in the operation of its Medicaid program.

## COUNT XVII

### MASSACHUSETTS FALSE CLAIMS ACT, MASS. GEN. LAWS CHAP. 12 § 5(A) *et seq.*

180. Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

181. This is a claim for treble damages and penalties under the Massachusetts False Claims Act, Mass. Gen. Laws Chap. 12 § 5(A) *et seq.*

182. Defendants violated Mass. Gen. Laws. Chap. 12 § 5B by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the Commonwealth of Massachusetts in violation of federal and state laws. The Commonwealth of Massachusetts, by and through the Massachusetts Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

183. Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the Commonwealth of Massachusetts.

184.     Had the Commonwealth of Massachusetts known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal practices caused to be submitted.

185.     As a result of Defendants' violations of Mass. Gen. Laws Chap. 12 § 5B, the Commonwealth of Massachusetts has been damaged in a significant amount to be determined at trial.

186.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon that exact same facts as the federal claim, and merely asserts separate damage to the Commonwealth of Massachusetts in the operation of its Medicaid program.

## COUNT XVIII

### MICHIGAN MEDICAID FALSE CLAIM ACT, M.C.L. 400.601 *et seq.*

187.     Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

188.     This is a claim for treble damages and penalties under the Michigan Medicaid False Claim Act, M.C.L. 400.601 *et seq.*

189.     Defendants violated M.C.L. 400.607 by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of Michigan in violation of federal and state laws. The State of Michigan, by and through the State of Michigan's Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

190.     Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of Michigan.

35

191.    Had the State of Michigan known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal practices caused to be submitted.

192.    As a result of Defendants' violations of M.C.L.A. 400.607, the State of Michigan has been damaged in a significant amount to be determined at trial.

193.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim and asserts separate damage to the State of Michigan in the operation of its Medicaid program.

## COUNT XIX

### MINNESOTA FALSE CLAIMS ACT, MINN. STAT. § 15C.01 *et seq.*

194.    Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

195.    This is a claim for treble damages and penalties under the Minnesota False Claims Act, Minn. Stat. § 15C.01 *et seq.*

196.    Defendants violated Minn. Stat. § 15C.02(a) by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of Minnesota in violation of federal and state laws. The State of Minnesota, by and through the State of Minnesota's Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

197.    Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of Minnesota.

36

198.    Had the State of Minnesota known that Defendants were violating the federal and

state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal

practices caused to be submitted.

199.    As a result of Defendants' violations of Minn. Stat. § 15C.02(a), the State of

Minnesota has been damaged in a significant amount to be determined at trial.

200.    This Court is requested to accept supplemental jurisdiction of this related state

claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to

the State of Minnesota in the operation of its Medicaid program.

## COUNT XX

### MONTANA FALSE CLAIMS ACT MONT. ST. 17-8-401 *et seq.*

201.    Relator re-alleges and incorporates the allegations in the preceding paragraphs as

if fully set forth herein.

202.    This is a claim for treble damages and penalties under the Montana False Claims

Act, Mont. Stat. 17-8-401 *et seq.*

203.    Defendants violated Mont. Stat. 17-8-403 by engaging in the fraudulent and

illegal practices described herein, including knowingly causing thousands of false claims to be

made, used, and presented to the State of Montana in violation of federal and state laws.  The

State of Montana, by and through the State of Montana's Medicaid program and other state

health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the

claims submitted in connection therewith.

204.    Compliance with applicable federal and state laws and regulations cited herein is

a material condition of payment of claims submitted to the State of Montana.

37

205.   Had the State of Montana known that Defendants were violating the federal and
state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal
practices caused to be submitted.

206.   As a result of Defendants' violations of Mont. Stat. 17-8-403, the State of
Montana has been damaged in a significant amount to be determined at trial.

207.   This Court is requested to accept supplemental jurisdiction of this related state
claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to
the State of Montana in the operation of its Medicaid program.

## COUNT XXI

### NEVADA FALSE CLAIMS ACT, NEV. REV. STAT. § 357.010 *et seq.*

208.   Relator re-alleges and incorporates the allegations in the preceding paragraphs as
if fully set forth herein.

209.   This is a claim for treble damages and penalties under the Nevada False Claims
Act, Nev. Rev. Stat. § 357.010 *et. seq.*

210.   Defendants violated Nev. Rev. Stat. § 357.040(1) by engaging in the fraudulent
and illegal practices described herein, including knowingly causing thousands of false claims to
be made, used, and presented to the State of Nevada in violation of federal and state laws. The
State of Nevada, by and through the State of Nevada's Medicaid program and other health care
programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims
submitted in connection therewith.

211.   Compliance with applicable federal and state laws and regulations cited herein is
a material condition of payment of claims submitted to the State of Nevada.

38

212. Had the State of Nevada known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal practices caused to be submitted.

213. As a result of Defendants' violations of Nev. Rev.Stat. § 357.040(1), the State of Nevada has been damaged in a significant amount to be determined at trial.

214. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to the State of Nevada in the operation of its Medicaid program.

## COUNT XXII

### NEW JERSEY FALSE CLAIMS ACT, N.J. STAT. 2A:32C-1 *et seq.*

215. Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

216. This is a claim for treble damages and penalties under the New Jersey False Claims Act, N.J. Stat. 2A:32C-1 *et seq.*

217. Defendants violated N.J.S.A. 2A:32C-3 by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of New Jersey in violation of federal and state laws. The State of New Jersey, by and through the State of New Jersey's Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

218. Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of New Jersey.

219. Had the State of New Jersey known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal practices caused to be submitted.

220. As a result of Defendants' violations of N.J. Stat. 2A:32C-3, the State of New Jersey has been damaged in a significant amount to be determined at trial.

221. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to the State of New Jersey in the operation of its Medicaid program.

## COUNT XXIII

### NEW HAMPSHIRE FALSE CLAIMS ACT, N.H. REV. STAT. § 167:58 *et seq.*

222. Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

223. This is a claim for treble damages and penalties under the New Hampshire False Claims Act, N.H. Rev. Stat. § 167:58 *et seq.*

224. Defendants violated N.H. Rev. Stat. § 167:61-a and –b by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of New Hampshire in violation of federal and state laws. The State of New Hampshire, by and through the State of New Hampshire's Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

225. Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of New Hampshire.

226. Had the State of New Hampshire known that Defendants were violating the

federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent

and illegal practices caused to be submitted.

227. As a result of Defendants' violations of N.H. Rev. Stat. § 167:61-a and -b, the

State of New Hampshire has been damaged in a significant amount to be determined at trial.

228. This Court is requested to accept supplemental jurisdiction of this related state

claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to

the State of New Hampshire in the operation of its Medicaid program.

## COUNT XXIV

## NEW MEXICO MEDICAID FALSE CLAIMS ACT, N. M. STAT. § 27-14-1 *et seq.* AND NEW MEXICO FRAUD AGAINST TAXPAYERS ACT, N. M. STAT. § 44-9-1 *et seq.*

229. Relator re-alleges and incorporates the allegations in the preceding paragraphs as

if fully set forth herein.

230. This is a claim for treble damages and penalties under the New Mexico Medicaid

False Claims Act, N. M. S. A. 1978, § 27-14-1 *et seq.* and the New Mexico Fraud Against

Taxpayers Act, N. M. S. A. 1978, § 44-9-1 *et seq.*

231. Defendants violated N. M. Stat. §§ 27-14-4 and 44-9-3 by engaging in the

fraudulent and illegal practices described herein, including knowingly causing thousands of false

claims to be made, used, and presented to the State of New Mexico in violation of federal and

state laws. The State of New Mexico, by and through the State of New Mexico's Medicaid

program and other state health care programs, and while unaware of Defendants' fraudulent and

illegal practices, paid the claims submitted in connection therewith.

232. Compliance with applicable federal and state laws and regulations cited herein is

a material condition of payment of claims submitted to the State of New Mexico.

41

233.    Had the State of New Mexico known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal practices caused to be submitted.

234.    As a result of Defendants' violations of N. M. Stat. §§ 27-14-4 and 44-9-3, the State of New Mexico has been damaged in a significant amount to be determined at trial.

235.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to the State of New Mexico in the operation of its Medicaid program.

## COUNT XXV

### NEW YORK FALSE CLAIMS ACT, STATE FINANCE LAW § 187 *et seq.*

236.    Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

237.    This is a claim for treble damages and penalties under the New York False Claims Act, State Finance Law § 187 *et seq.*

238.    Defendants violated State Finance Law § 189 by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of New York in violation of federal and state laws.  The State of New York, by and through the State of New York's Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

239.    Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of New York.

240. Had the State of New York known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal practices caused to be submitted.

241. As a result of Defendants' violations of State Finance Law § 189, the State of New York has been damaged in a significant amount to be determined at trial.

242. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to the State of New York in the operation of its Medicaid program.

## COUNT XXVI

## NORTH CAROLINA FALSE CLAIMS ACT, N.C. GEN. STAT. CH. 1, ART. 5 § 1-605 *et seq.*

243. Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

244. This is a claim for treble damages and penalties under the North Carolina False Claims Act, N.C. Gen. Stat. § 1-605 *et seq.*

245. Defendants violated N.C. Gen. Stat. § 1-607 by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of North Carolina in violation of federal and state laws. The State of North Carolina, by and through the State of North Carolina's Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

246. Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of North Carolina.

43

247. Had the State of North Carolina known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal practices caused to be submitted.

248. As a result of Defendants' violations of N.C. Gen. Stat. § 1-607, the State of North Carolina has been damaged in a significant amount to be determined at trial.

249. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to the State of North Carolina in the operation of its Medicaid program.

## COUNT XXVII

### OKLAHOMA MEDICAID FALSE CLAIMS ACT, 63 OKL. STAT. § 5053 *et seq.*

250. Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

251. This is a claim for treble damages and penalties under the Oklahoma Medicaid False Claims Act, 63 Okl. Stat. § 5053 *et seq.*

252. Defendants violated 63 Okl. St. Ann. § 5053.1 by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of Oklahoma in violation of federal and state laws. The State of Oklahoma, by and through the State of Oklahoma's Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

253. Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of Oklahoma.

254. Had the State of Oklahoma known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal practices caused to be submitted.

255. As a result of Defendants' violations of 63 Okl. St. Ann. § 5053.1, the State of Oklahoma has been damaged in a significant amount to be determined at trial.

256. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to the State of Oklahoma in the operation of its Medicaid program.

## COUNT XXVIII

### RHODE ISLAND FALSE CLAIMS ACT, R.I. GEN. LAWS § 9-1.1-1 *et seq.*

257. Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

258. This is a claim for treble damages and penalties under the Rhode Island False Claims Act, R.I. Gen. Laws § 9-1.1-1 *et seq.*

259. Defendants violated R.I. Gen. Laws § 9-1.1-3 by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of Rhode Island in violation of federal and state laws. The State of Rhode Island, by and through the State of Rhode Island's Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

260. Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of Rhode Island.

261. Had the State of Rhode Island known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal practices caused to be submitted.

262. As a result of Defendants' violations of R.I. Gen. Laws § 9-1.1-3, the State of Rhode Island has been damaged in a significant amount to be determined at trial.

263. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to the State of Rhode Island in the operation of its Medicaid program.

## COUNT XXIX

### TENNESSEE FALSE CLAIMS ACT, TENN. CODE § 71-5-181 *et seq.*

264. Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

265. This is a claim for treble damages and penalties under the Tennessee Medicaid False Claims Act, Tenn. Code § 71-5-181 *et seq.*

266. Defendants violated Tenn. Code § 71-5-182(a)(1) by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of Tennessee in violation of federal and state laws. The State of Tennessee, by and through the State of Tennessee's Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

267. Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of Tennessee.

46

268.    Had the State of Tennessee known that Defendants violated the federal and state

laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal

practices caused to be submitted.

269.    As a result of Defendants' violations of Tenn. Code Ann. § 71-5-182(a)(1), the

State of Tennessee has been damaged in a significant amount to be determined at trial.

270.    This Court is requested to accept supplemental jurisdiction of this related state

claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to

the State of Tennessee in the operation of its Medicaid program.

## COUNT XXX

## TEXAS MEDICAL ASSISTANCE PROGRAM, TEX. HUM. RES. CODE § 32.039(b)*et seq.*

271.    Relator re-alleges and incorporates the allegations in the preceding paragraphs as

if fully set forth herein.

272.    This is a claim for double damages and penalties under the Texas Medical

Assistance Program, Tex. Hum. Res. Code Ann. § 32.039(b) *et seq.*

273.    Defendants violated Tex. Hum. Res. Code § 32.039(b)(1) by engaging in the

fraudulent and illegal practices described herein, including knowingly causing thousands of false

claims to be made, used, and presented to the State of Texas in violation of federal and state

laws. The State of Texas, by and through the State of Texas's Medicaid program and other state

health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the

claims submitted in connection therewith.

274.    Compliance with applicable federal and state laws and regulations cited herein is

a material condition of payment of claims submitted to the State of Texas.

275.    Had the State of Texas known that Defendants violated the federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal practices caused to be submitted.

276.    As a result of Defendants' violations of Tex. Hum. Res. Code § 32.039(b)(1), the State of Texas has been damaged in a significant amount to be determined at trial.

277.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to the State of Texas in the operation of its Medicaid program.

## COUNT XXXI

## TEXAS MEDICAID FRAUD PREVENTION LAW, TEX. HUM. RES. CODE § 36.002 *et seq.*

278.    Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

279.    This is a claim for double damages and penalties under the Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code § 36.002 *et seq.*

280.    Defendants violated Tex. Hum. Res. Code § 36.002(1) by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the State of Texas in violation of federal and state laws.  The State of Texas, by and through the State of Texas's Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

281.    Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the State of Texas.

48

282. Had the State of Texas known that Defendants violated the federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal practices caused to be submitted.

283. As a result of Defendants' violations of Tex. Hum. Res. Code § 36.002(1), the State of Texas has been damaged in a significant amount to be determined at trial.

This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to the State of Texas in the operation of its Medicaid program.

## COUNT XXXII

### VIRGINIA FRAUD AGAINST TAXPAYERS ACT, VA. CODE § 8.01-216.1 *et seq.*

284. Relator re-alleges and incorporates the allegations in the preceding paragraphs as if fully set forth herein.

285. This is a claim for treble damages and penalties under the Virginia Fraud Against Taxpayers Act, Va. Code § 8.01-216.1 *et seq.*

286. Defendants violated Va. Code § 8.01-216.3 by engaging in the fraudulent and illegal practices described herein, including knowingly causing thousands of false claims to be made, used, and presented to the Commonwealth of Virginia in violation of federal and state laws. The Commonwealth of Virginia, by and through the Commonwealth of Virginia's Medicaid program and other state health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the claims submitted in connection therewith.

287. Compliance with applicable federal and state laws and regulations cited herein is a material condition of payment of claims submitted to the Commonwealth of Virginia.

288.    Had the Commonwealth of Virginia known that Defendants were violating the

federal and state laws cited herein, it would not have paid the claims that Defendants' fraudulent

and illegal practices caused to be submitted.

289.    As a result of Defendants' violations of Va. Code § 8.01-216.3, the

Commonwealth of Virginia has been damaged in a significant amount to be determined at trial.

290.    This Court is requested to accept supplemental jurisdiction of this related state

claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to

the Commonwealth of Virginia in the operation of its Medicaid program.

## COUNT XXXIII

## WISCONSIN FALSE CLAIMS FOR MEDICAL ASSISTANCE ACT, WISC. STAT. 20.931 *et seq.*

291.    Relator re-alleges and incorporates the allegations in the preceding paragraphs as

if fully set forth herein.

292.    This is a claim for treble damages and penalties under the Wisconsin False Claims

for Medical Assistance Act, Wisc. Stat. 20.931 *et seq.*

293.    Defendants violated Wisc. Stat. 20.931(2) by engaging in the fraudulent and

illegal practices described herein, including knowingly causing thousands of false claims to be

made, used, and presented to the State of Wisconsin in violation of federal and state laws.  The

State of Wisconsin, by and through the State of Wisconsin's Medicaid program and other state

health care programs, and while unaware of Defendants' fraudulent and illegal practices, paid the

claims submitted in connection therewith.

294.    Compliance with applicable federal and state laws and regulations cited herein is

a material condition of payment of claims submitted to the State of Wisconsin.

295.    Had the State of Wisconsin known that Defendants were violating the federal and
state laws cited herein, it would not have paid the claims that Defendants' fraudulent and illegal
practices caused to be submitted.

296.    As a result of Defendants' violations of Wisc. Stat. 20.931(2), the State of
Wisconsin has been damaged in a significant amount to be determined at trial.

297.    This Court is requested to accept supplemental jurisdiction of this related state
claim as it is predicated upon the same facts as the federal claim, and asserts separate damage to
the State of Wisconsin in the operation of its Medicaid program.

## PRAYER FOR RELIEF

298.    **WHEREFORE**, Relator respectfully requests this Court to award judgment of
the following to the parties and against Defendants:

To the STATE OF CALIFORNIA:

> Three times the amount of damages which the State of California has
> sustained as a result of Defendants' fraudulent and illegal practices; and
>
> A civil penalty of $10,000 for each false claim that Defendants presented
> or caused to be presented to the State of California.

To the STATE OF COLORADO:

> Three times the amount of damages which the State of Colorado has
> sustained as a result of Defendants' fraudulent and illegal practices; and
>
> A civil penalty of $10,000 for each false claim that Defendants presented
> or caused to be presented to the State of Colorado.

To the STATE OF CONNECTICUT:

> Three times the amount of damages which the State of Connecticut has
> sustained as a result of Defendants' fraudulent and illegal practices; and
>
> A civil penalty of $10,000 for each false claim that Defendants presented
> or caused to be presented to the State of Connecticut.

To the STATE OF DELAWARE:

> Three times the amount of damages which the State of Delaware has sustained as a result of Defendants' fraudulent and illegal practices; and

> A civil penalty of $11,000 for each false claim that Defendants caused to be presented to the State of Delaware.

To the DISTRICT OF COLUMBIA:

> Three times the amount of damages which the District of Columbia has sustained as a result of Defendants' fraudulent and illegal practices; and

> A civil penalty of $10,000 for each false claim that Defendants caused to be presented to the District of Columbia.

To the STATE OF FLORIDA:

> Three times the amount of actual damages which the State of Florida has sustained as a result of Defendants' fraudulent and illegal practices; and

> A civil penalty of $10,000 for each false claim that Defendants caused to be presented to the State of Florida.

To the STATE OF GEORGIA:

> Three times the amount of actual damages which the State of Georgia has sustained as a result of Defendants' fraudulent and illegal practices; and

> A civil penalty of $11,000 for each false claim that Defendants caused to be presented to the State of Georgia.

To the STATE OF HAWAII:

> Three times the amount of actual damages which the State of Hawaii has sustained as a result of Defendants' fraudulent and illegal practices; and

> A civil penalty of $10,000 for each false claim that defendants caused to be presented to the State of Hawaii.

To the STATE OF ILLINOIS:

> Three times the amount of actual damages which the State of Illinois has sustained as a result of Defendants' fraudulent and illegal practices; and

> A civil penalty of $10,000 for each false claim which Defendants caused to be presented to the State of Illinois.

To the STATE OF INDIANA:

> Three times the amount of actual damages which the State of Indiana has sustained as a result of Defendants' fraudulent and illegal practices; and
>
> A civil penalty of $5,000 for each violation of Ind. Code Ann. §5-11-5.5-2(b).

To the STATE OF IOWA:

> Three times the amount of actual damages which the State of Indiana has sustained as a result of Defendants' fraudulent and illegal practices; and
>
> A civil penalty of $11,000 for each false claim which Defendants caused to be presented to the State of Iowa.

To the STATE OF LOUISIANA:

> Three times the amount of actual damages which the State of Louisiana has sustained as a result of Defendants' fraudulent and illegal practices; and
>
> A civil penalty of $10,000 for each false claim which Defendants caused to be presented to the State of Louisiana.

To the STATE OF MARYLAND:

> Three times the amount of actual damages which the State of Maryland has sustained as a result of Defendants' fraudulent and illegal practices; and
>
> A civil penalty of $10,000 for each false claim that Defendants caused to be presented to the State of Maryland.

To the COMMONWEALTH OF MASSACHUSETTS:

> Three times the amount of actual damages which that Commonwealth of Massachusetts has sustained as a result of Defendants' fraudulent and illegal practices; and
>
> A civil penalty of $10,000 for each false claim that Defendants caused to be presented to the Commonwealth of Massachusetts.

To the STATE OF MICHIGAN:

> All damages to which the State of Michigan is entitled pursuant to M.C.L.A. 400.612; and

A civil penalty of $10,000 for each false claim that Defendants caused to be presented to the State of Michigan.

To the STATE OF MINNESOTA:

Three times the amount of actual damages which that State of Minnesota has sustained as a result of Defendants' fraudulent and illegal practices; and

A civil penalty of $11,000 for each false claim that Defendants caused to be presented to the State of Minnesota.

To the STATE OF MONTANA:

Three times the amount of actual damages which that State of Montana has sustained as a result of Defendants' fraudulent and illegal practices; and

A civil penalty of $10,000 for each false claim that Defendants caused to be presented to the State of Montana.

To the STATE OF NEVADA:

Three times the amount of actual damages which the State of Nevada has sustained as a result of Defendants' fraudulent and illegal practices; and

A civil penalty of $10,000 for each false claim that Defendants caused to be presented to the State of Nevada;

To the STATE OF NEW JERSEY:

Three times the amount of actual damages which the State of New Jersey has sustained as a result of Defendants' fraudulent and illegal practices; and

A civil penalty of $10,000 for each false claim that Defendants caused to be presented to the State of New Jersey.

To the STATE OF NEW HAMPSHIRE:

Three times the amount of actual damages which the State of New Hampshire has sustained as a result of Defendants' fraudulent and illegal practices; and

A civil penalty of $10,000 for each false claim that Defendants caused to be presented to the State of New Hampshire.

To the STATE OF NEW MEXICO:

> Three times the amount of actual damages which the State of New Mexico has sustained as a result of Defendants' fraudulent and illegal practices; and

> A civil penalty of $10,000 for each false claim that Defendants caused to be presented to the State of New Mexico.

To the STATE OF NEW YORK:

> Three times the amount of actual damages which the State of New York has sustained as a result of Defendants' fraudulent and illegal practices; and

> A civil penalty of $10,000 for each false claim that Defendants caused to be presented to the State of New York.

To the STATE OF OKLAHOMA:

> Three times the amount of actual damages which the State of Oklahoma has sustained as a result of Defendants' fraudulent and illegal practices; and

> A civil penalty of $10,000 for each false claim that Defendants caused to be presented to the State of Oklahoma.

To the STATE OF RHODE ISLAND:

> Three times the amount of actual damages which the State of Rhode Island has sustained as a result of Defendants' fraudulent and illegal practices; and

> A civil penalty of $10,000 for each false claim that Defendants caused to be presented to the State of Rhode Island.

To the STATE OF TENNESSEE:

> Three times the amount of actual damages which the State of Tennessee has sustained as a result of Defendants' fraudulent and illegal practices; and

> A civil penalty of $10,000 for each false claim that Defendants caused to be presented to the State of Tennessee.

To the STATE OF TEXAS:

Two times the amount of actual damages which the State of Texas has sustained as a result of Defendants' fraudulent and illegal practices; and

A civil penalty of $10,000 for each false claim that Defendants caused to be presented to the State of Texas.

To the COMMONWEALTH OF VIRGINIA:

Three times the amount of actual damages which the Commonwealth of Virginia has sustained as a result of Defendants' fraudulent and illegal practices; and

A civil penalty of $10,000 for each false claim that Defendants caused to be presented to the Commonwealth of Virginia.

To the STATE OF WISCONSIN:

Three times the amount of damages which the State of Wisconsin has sustained as a result of Defendants' fraudulent and illegal practices; and

A civil penalty of $10,000 for each false claim that Defendants caused to be presented to the State of Wisconsin.

To ALL OF THE "CERTAIN STATES":

Prejudgment interest; and

All costs incurred in bringing this action; and

Such further relief as this Court deems equitable and just.

To RELATOR:

The maximum amounts allowed under each of:

Cal. Gov't Code § 12652, Co. Rev. Stat. § 25.5-4-303.5 *et seq*., Conn Gen. Stat. § 17b-301b *et seq*., 6 Del C. § 1205, D. C. Code § 2-308.15(f), Fla. Stat. § 68.085, Ga. Code § 49-4-168.2(i), Haw. Rev. Stat. § 661-27, 740 Ill. Comp. Stat./4(d), Ind. Code 5-11-5.5-6, Iowa Code § 685.3, La. Rev. Stat. § 439.4(A), Md. Code, Health–Gen. § 2-605, Mass. Gen. Laws Chap. 12 § 5F, Mich.C.L. 400.610a(9), Minn. Stat. § 15C.13, Mont. Stat. 17-8-410, Nev. Rev. Stat § 357.210, N.J. Stat. 2A:32C-7, N.H. Rev. Stat. § 167:61-e, N. M. Stat. §§ 27-14-9 and 44-9-7, N.Y. State Finance Law § 190(6), 63 Okl. Stat. § 5053.4, R.I. Gen. Laws § 9-1.1-4(d), Tenn. Code §71-5-183(c), Tex. Hum. Res. Code § 36.110, Va. Code § 8.01-216.7, Wisc. Stat. 20.931(11),

and/or any other applicable provision of law;

Reimbursement for reasonable expenses which Relators incurred in connection with this action;

An award of reasonable attorneys' fees and costs; and

Such further relief as this court deems equitable and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a

trial by jury.

DATED:     July 24, 2012                    Respectfully submitted,

### PASTOR LAW OFFICE

/s/ *David Pastor*

David Pastor (BBO # 391000)
63 Atlantic Avenue, Third Floor
Boston, MA 02110
Tel:    (617) 742-9700
Fax:    (617) 742-9701
dpastor@pastorlawoffice.com

### MILBERG LLP

/s/ *Brad N. Friedman*

Brad N. Friedman
bfriedman@milberg.com
Alastair J. M. Findeis
afindeis@milberg.com
One Pennsylvania Plaza
New York, New York 10119-0165
Tel:    (212) 594-5300
Fax:    (212) 868-1229

*Attorneys for Relator Timothy Leysock*